Victor J. Sandoval
**ALMEIDA LAW GROUP LLC**
3415 S. Sepulveda Blvd. Suite 1121
Los Angeles, California 90034
562-534-5907
victor@almeidalawgroup.com

*Attorney for Plaintiffs & the Proposed Class*
*[Additional counsel listed on signature page]*

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| E.P., J.S., *and* M.A., *on behalf of themselves and all others similarly situated*, <br><br> Plaintiffs, <br><br> vs. <br><br> MEDVI LLC, <br><br> Defendant. | Case No.: <br><br> **CLASS ACTION COMPLAINT** <br><br> 1. Violation of 18 U.S.C. § 2511(1), *et seq.*; <br> 2. Invasion of Privacy – Public Disclosure of Private Facts Under California Law; <br> 3. Invasion of Privacy – Intrusion Upon Seclusion under California Law; <br> 4. Violation of California Constitution Article I, § 1; <br> 5. Negligence under California Law; <br> 6. Violation of Cal. Penal Code § 631; <br> 7. Violation of Cal. Penal Code § 632; <br> 8. Violation of Cal. Penal Code §§ 638.50, 638.51; <br> 9. Violation of Cal. Penal Code § 502, *et seq.*; <br> 10. Violation of Cal. Civil Code §§ 56, *et seq.*; and <br> 11. Unjust Enrichment. <br><br> **DEMAND FOR JURY TRIAL** |

CLASS ACTION COMPLAINT

Plaintiffs E.P., J.S., and M.A. ("Plaintiffs"),[1] bring their class action lawsuit on behalf of themselves, and all others similarly situated (the "Class Members") against Defendant MEDVi LLC ("MEDVi" or "Defendant") in their individual capacity and on behalf of all others similarly situated and allege, upon personal knowledge as to their own actions and their counsel's investigation and upon information and good faith belief as to all other matters, as follows:

## **NATURE OF THE ACTION**

1.     This case concerns a practice that goes well beyond the typical website tracking allegations now common in federal courts. Defendant MEDVi, LLC ("Medvi") operates an online telehealth platform that invites users to provide sensitive personal and medical information in order to obtain healthcare services, including prescription weight-loss treatments. While doing so, Medvi represents to users that their information is "never shared" and is "protected by HIPAA." In reality, Medvi secretly transmits users' information—including identifying information such as email addresses and details reflecting their participation in a medical intake process—to third parties, including Google, through embedded tracking technologies. It does so without users' knowledge or valid consent.

2.     Each time a user completes Medvi's intake process on its website, www.medvi.org (the "Website"), Medvi causes the user's browser to send information to Google-controlled advertising and analytics endpoints, including through Google's remarketing infrastructure. These transmissions occur contemporaneously with the user's interaction with the Website and include the full URL of pages visited—URLs that, as configured by Medvi, contain the user's email address in plaintext, along with information reflecting that the user has completed a medical intake process.

---

[1] Plaintiffs file their Complaint under pseudonyms to protect their health information under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") as well as California law.

1

3. In this way, Medvi leverages tools designed for advertising, analytics, and user profiling in the context of healthcare services, allowing information about identifiable individuals seeking medical treatment to be disclosed to third parties outside the provider-patient relationship.

4. The implications of this practice are significant: Medvi affirmatively tells users that their information will "never [be] shared" and is protected by HIPAA at the very moment it requests their contact information and initiates the medical intake process. If users cannot trust that such explicit representations will be honored—particularly when seeking medical care—then the trust essential to telehealth and the broader healthcare system is undermined.

5. Medvi accomplishes these disclosures by embedding tracking technologies on its Website, including Google Ads remarketing and analytics tools (the "Tracking Technologies"). As implemented, these Tracking Technologies automatically transmit users' interactions with Medvi's Website—including page URLs, identifiers, and associated data—to Google-controlled endpoints contemporaneously with those interactions, without any action by the user.

6. These transmissions reveal highly sensitive information concerning users' healthcare-related activities, including their efforts to obtain prescription weight-loss medications and complete medical intake forms.

7. Medvi operates a nationwide telehealth platform through which users can seek medical consultations, obtain prescriptions, and coordinate pharmacy fulfillment. Medvi actively encourages users to provide personal and health-related information through its Website in order to access these services.

8. At the same time, Medvi deploys the Tracking Technologies in a manner that causes users' healthcare-related interactions to be transmitted to Google automatically and in real time. These transmissions include information reflecting the substance of users' communications with Medvi—including the fact that a user has completed an intake process for medical treatment—together with identifying

2

CLASS ACTION COMPLAINT

information such as email addresses and persistent identifiers.

9. The information transmitted to Google is not anonymous. It includes users' email addresses in plaintext, embedded within URLs transmitted to Google's advertising infrastructure, along with persistent identifiers and device information that enable Google to associate those communications with specific individuals and incorporate that information into user profiles used for analytics, marketing, and targeted advertising.

10. Medvi made the deliberate decision to design its Website in a manner that embeds users' identifying information within URLs that are automatically transmitted to third-party tracking services, despite knowing that users would be providing sensitive health-related information in reliance on Medvi's representations of confidentiality.

11. Users reasonably expect that their interactions with a healthcare platform—particularly when providing information to obtain medical treatment—will remain confidential. That expectation is reinforced not only by longstanding norms of medical confidentiality, but also by Medvi's own express representations that user information is "never shared" and "protected by HIPAA," including through its Notice of Privacy Practices and intake flow disclosures.

12. Consistent with those expectations, neither Plaintiffs nor Class Members provided informed consent for Medvi to transmit their healthcare-related communications and identifying information to Google or any other third party for advertising or analytics purposes. Any purported consent obtained through pre-checked boxes or similar mechanisms was not valid, informed, or legally effective.

13. By transmitting users' healthcare-related communications and identifying information to Google through the Tracking Technologies, Medvi discloses and enables the interception of information protected by well-established privacy norms and legal safeguards, including those reflected in HIPAA and analogous privacy frameworks. Medvi's conduct is independently unlawful and undertaken for an

CLASS ACTION COMPLAINT

improper purpose, supporting application of the crime–tort exception to statutory defenses that might otherwise be asserted under the Federal Wiretap Act.

14. As a result of Medvi's conduct, Plaintiffs' and Class Members' Private Information is intercepted, disclosed, and incorporated into Google's data systems, where it is used to build profiles, analyze behavior, and support targeted advertising and other commercial uses.

15. Plaintiffs bring this action to enjoin Medvi's unlawful practices, to obtain damages and other relief for the invasion of privacy, and to require Medvi to disclose the full scope of its data sharing practices and the identities of all recipients of users' Private Information..

16. Plaintiffs seek to remedy these harms and bring causes of action for (i) violation of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2511(1), et seq.; (ii) invasion of privacy – public disclosure of private facts under California law; (iii) invasion of privacy – intrusion upon seclusion under California law; (iv) violation of California Constitution Article I, § 1; (v) Negligence under California law; (vi) violation of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631; (vii) violation of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 632; (viii) violation of Cal. Penal Code §§ 638.50, 638.51; (ix) violation of the Comprehensive Computer Data Access and Fraud Act, Cal. Penal Code § 502, et seq.; (x) violation of the California Confidentiality of Medical Information Act, Cal. Civil Code §§ 56, et seq.; and (xi) unjust enrichment.

## PARTIES

17. Plaintiff E.P. is, and at all relevant times was, an individual residing in the State of Florida. Plaintiff E.P. used Defendant's Website to receive telehealth services from approximately August 2025 through November 2025. As a result, Plaintiff's Private Information was disclosed to Google and other third parties without his knowledge, consent, or authorization.

18. Plaintiff J.S. is, and at all relevant times was, an individual residing in the

CLASS ACTION COMPLAINT

State of Texas. Plaintiff J.S. used Defendant's Website to receive telehealth services from approximately November 2025 through December 2025. As a result, Plaintiff's Private Information was disclosed to Google and other third parties without his knowledge, consent, or authorization.

19. Plaintiff M.A. is, and at all relevant times was, an individual residing in the State of Texas. Plaintiff M.A. used Defendant's Website to receive telehealth services from approximately November 2025 through December 2025. As a result, Plaintiff's Private Information was disclosed to Google and other third parties without her knowledge, consent, or authorization.

20. Defendant MEDVi LLC ("Medvi") is a Delaware limited liability company with its principal place of business in Los Angeles, California. Medvi operates a nationwide telehealth platform accessible through its Website, www.medvi.org, through which users can seek medical consultations, complete intake forms, obtain prescriptions, and coordinate pharmacy fulfillment for healthcare services, including prescription weight-loss treatments.

21. Medvi holds itself out as a healthcare-adjacent platform that collects, processes, and manages sensitive health-related information in connection with medical services. Medvi represents to users that their information is "never shared" and is "protected by HIPAA," including through its intake process and privacy disclosures. Through these representations, Medvi adopts and invokes the privacy standards governing individually identifiable health information, including those reflected in the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), and thereby assumes a duty to safeguard such information consistent with those standards.

## JURISDICTION & VENUE

22. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d) because this case is brought as a class action where the amount in controversy exceeds the sum or value

CLASS ACTION COMPLAINT

of $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class, is a citizen of a state different from Defendant.

23. This Court also has federal question jurisdiction under 28 U.S.C. § 1331 because this Complaint alleges question of federal laws under the ECPA (18 U.S.C. § 2511, *et seq.*).

24. Additionally, this Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) because the statutory and common-law claims alleged herein form part of the same case or controversy to the federal claims.

25. This Court has personal jurisdiction over Defendant because (a) Medvi operates its business in Los Angeles, California and (b) a substantial part of the events and conduct giving rise to Plaintiffs' claims occurred in California, including Medvi's interception and use of Plaintiffs' unique identifiers and other personal data.

26. Venue is proper 28 U.S.C. §1391(b), (c), and (d) because a substantial portion of the conduct described in this Class Action Complaint was carried out in this District.

## COMMON FACTUAL ALLEGATIONS

### a. BACKGROUND OF USER TRACKING

27. Modern websites commonly incorporate tracking technologies—such as pixels, web beacons, JavaScript tags, and software development kits ("SDKs")—to monitor user activity and transmit data to third parties.

28. These tracking technologies are not passive tools. Rather, they are deliberately embedded into a website's source code by the website operator and configured to automatically execute within a user's browser upon page load.

29. Once activated, these technologies capture and transmit information reflecting a user's interactions with the website, including pages visited, buttons clicked, data entered into forms, and other communications between the user and the website.

30. These transmissions occur in real time, contemporaneously with the user's interaction, and without requiring any further action by the user.

31. The data collected and transmitted through these tracking technologies often includes persistent identifiers—such as cookies, device identifiers, and advertising IDs—that enable third parties to associate the captured information with specific users across multiple sessions, devices, and websites.

32. In many instances, these tracking technologies transmit not only metadata about a user's activity, but also the **substance of the user's communications**, including information entered into forms and URLs reflecting the content of a user's interaction with the website.

33. Website operators use these technologies primarily for advertising, marketing attribution, and user profiling. By transmitting user interaction data to third-party advertising platforms, website operators enable those third parties to build detailed profiles of users, analyze their behavior, and target them with advertisements.

34. These practices are particularly concerning in the context of healthcare and telehealth platforms, where users are encouraged to disclose sensitive personal and medical information in order to obtain care.

35. In that context, the use of tracking technologies designed for advertising and profiling results in the transmission of highly sensitive health-related information to third parties outside the provider-patient relationship.

36. Despite the sensitivity of this information, these transmissions typically occur without users' knowledge or meaningful consent, and without any necessity for the provision of healthcare services.

### b. GOOGLE'S TRACKING TECHNOLOGIES

#### i. Google's Unique Identifiers

37. Google's tracking technologies rely on persistent unique identifiers that enable Google to recognize and track individual users across websites, devices, and sessions.

7

38. These identifiers include, among others:

- Google Client IDs ("CID"), stored in cookies such as _ga;
- advertising identifiers associated with Google Ads and DoubleClick, including identifiers stored in cookies such as IDE;
- click-based identifiers such as gclid (Google Click Identifier), which link user activity to specific advertising campaigns; and
- additional device- and browser-level identifiers transmitted as part of Google's tracking requests.

39. These identifiers are persistent and unique to a given user or device. They allow Google to associate multiple interactions over time with the same individual user.

40. When transmitted together with information about a user's activity—such as pages visited or actions taken—these identifiers enable Google to build detailed profiles reflecting that user's behavior, interests, and characteristics.

41. Importantly, these identifiers need not directly include a user's name to identify them. Google's systems are designed to associate these identifiers with real-world identities through account logins, cross-device tracking, and data obtained from other sources.

### ii. Google's Comprehensive Identity and Advertising Ecosystem

42. Google operates an integrated advertising and data ecosystem designed to collect, aggregate, and monetize user data across millions of websites and applications.

43. Through this ecosystem, Google combines data collected from individual websites with information obtained from other sources—including Google accounts, mobile devices, and third-party partners—to create unified user profiles.

44. These profiles allow Google to:

- associate browsing activity across multiple websites and devices;
- infer users' interests, preferences, and personal characteristics;

8

CLASS ACTION COMPLAINT

- segment users into audiences for targeted advertising; and
- deliver personalized advertisements based on users' behavior.

45. Google's remarketing and advertising systems are specifically designed to track users after they visit a website and to target them with advertisements based on those visits.

46. As part of this process, Google encourages website operators to share user interaction data so that it can be used to build remarketing audiences and optimize advertising campaigns.

47. Google's systems are capable of linking pseudonymous identifiers—such as cookies and device IDs—with real-world identities, including through users' Google accounts and other identifying data.

48. As a result, information transmitted through Google's tracking technologies is not isolated or anonymous, but instead becomes part of a broader identity graph that enables Google to associate user activity with identifiable individuals.

### iii. Google's Data Collection Methods

49. Google's tracking technologies are implemented through JavaScript code embedded on a website, including tags provided through Google Tag Manager, Google Analytics, and Google Ads.

50. Once installed, these technologies automatically execute when a user visits a webpage and begin collecting information about the user's interaction with that page.

51. This information is transmitted to Google's servers through HTTP requests sent directly from the user's browser.

52. These requests typically include:

- the full URL of the webpage visited (the "document location" or "dl" parameter);
- the referring URL ("dr" parameter);

9

CLASS ACTION COMPLAINT

- device, browser, and network information; and

- persistent identifiers associated with the user.

53. Critically, the URL transmitted to Google may include sensitive information embedded by the website operator, such as data contained in query string parameters.

54. Because Google's tracking technologies transmit the full URL, any information included within that URL—including user-entered data—will be disclosed to Google when the request is sent.

55. These transmissions occur automatically and in real time, contemporaneously with the user's interaction with the website.

56. Google's remarketing endpoints, including requests to domains such as google.com/rmkt/collect and googleads.g.doubleclick.net, are specifically designed to capture user activity for advertising and retargeting purposes.

57. As implemented, these tracking technologies function as mechanisms for duplicating and transmitting users' communications with a website to Google at the moment those communications occur.

### iv. Google's Monetization and Use of Users' Data

58. Google's business model is driven primarily by advertising revenue, which depends on its ability to collect, analyze, and monetize user data.

59. The information collected through Google's tracking technologies is used to:

- build detailed profiles of individual users;

- categorize users into advertising segments;

- predict users' interests and behaviors; and

- deliver targeted advertisements across Google's network and partner websites.

CLASS ACTION COMPLAINT

60. Google's advertising systems allow advertisers to target users based on highly specific behaviors, including their interactions with particular websites, pages, or services.

61. Through remarketing, Google enables advertisers to target users who have previously visited a website, including users who have engaged in specific actions such as completing forms or initiating transactions.

62. The data collected through these systems is not used solely for analytics, but is integrated into Google's advertising infrastructure, where it is used to generate revenue through targeted advertising and behavioral profiling.

63. By transmitting user data to Google through these tracking technologies, website operators enable Google to incorporate that data into its broader advertising ecosystem and to monetize users' interactions for commercial purposes.

### c. MEDVI DISCLOSED PLAINTIFFS' PRIVATE INFORMATION TO GOOGLE AND ASSISTED GOOGLE IN INTERCEPTING THEIR COMMUNICATIONS.

64. Defendant's Website is accessible on mobile devices and desktop computers and allows users to communicate with Defendant in order to obtain telehealth services, including completing intake forms and seeking prescription weight-loss treatments.

65. Defendant encourages users to use its Website to provide their Private Information, including their contact information, medical history, and other sensitive health-related data, as part of the intake and onboarding process.

66. Despite these representations of confidentiality, Defendant deliberately installed Tracking Technologies on its Website and configured specific webpages to surreptitiously disclose users' Private Information to third parties, including Google.

67. These Tracking Technologies recorded and disseminated users' information as they navigated and communicated with Defendant via the Website, simultaneously transmitting the substance of those communications to Google-

11

CLASS ACTION COMPLAINT

controlled endpoints.

68. The information disclosed by Defendant includes Private Information such as users' email addresses, the fact that a user completed a medical intake process, and other sensitive healthcare-related interactions.

69. This information is not anonymous. Rather, it is transmitted alongside identifying information—including users' email addresses in plaintext—allowing Google to associate the disclosed information with specific individuals.

### d. MEDVI'S TRACKING TECHNOLOGIES, SOURCE CODE, AND INTERCEPTION OF HTTP REQUESTS AND TRANSMISSION OF HTTP REQUESTS

70. Web browsers are software applications that allow users to access websites and exchange electronic communications over the internet. Each interaction between a user and a website consists of a series of communications between the user's browser and the website's servers.

71. These communications occur through HTTP Requests and HTTP Responses. When a user interacts with a website, their browser sends HTTP Requests to the website's server, and the server responds with HTTP Responses that render the website's content.

72. Each webpage is composed of both visible content ("Markup") and underlying instructions ("source code"). The source code directs the user's browser to perform specific actions when the page loads or when certain events occur.

73. Defendant embedded Google Tracking Technologies within its Website's source code. These technologies execute automatically when a user loads a webpage and cause the user's browser to transmit information to third-party servers, including Google.

74. These transmissions occur invisibly to users and without their knowledge.

75. When a user completes Defendant's intake process and is redirected to a confirmation page, Defendant's source code causes the user's browser to send HTTP

CLASS ACTION COMPLAINT

Requests to Google-controlled endpoints, including requests to domains such as **google.com/rmkt/collect**.

*[Remainder of Page Intentionally Left Blank]*

CLASS ACTION COMPLAINT

**FIGURE 1.** *A Screenshot of confirmation page markup (what the user sees).*

14

76. While the user sees only the webpage content, Defendant's source code simultaneously triggers hidden tracking requests that transmit information about the user's interaction to Google.

77. These tracking requests include the full URL of the webpage visited, transmitted as part of the request payload.

**e. MEDVI DISCLOSED PLAINTIFFS' AND CLASS MEMBERS' PRIVATE INFORMATION TO GOOGLE AND OTHER THIRD PARTIES USING TRACKING TECHNOLOGIES.**

78. Defendant configured its Website such that, upon completion of the intake process, users are directed to a confirmation page whose URL contains the user's email address in plaintext.

79. This URL is automatically transmitted to Google through Defendant's implementation of Google's Tracking Technologies.



medvi.org/results/approval-confirmation.php?db=true&bf=1&uid=&email=jacobtest19@gmail.com

**FIGURE 2.** *Screenshot of browser address bar showing confirmation page URL containing plaintext email.*

80. Specifically, Defendant's Website causes the user's browser to send a request to Google's remarketing endpoint (**google.com/rmkt/collect**) that includes the full document location ("**dl**") parameter.

81. Because the document location includes the user's email address embedded in the URL, Defendant's Tracking Technologies transmit that email address directly to Google.

CLASS ACTION COMPLAINT

**FIGURE 3.** *Network traffic screenshot showing request to google.com/rmkt/collect with "dl" parameter containing email address.*

82.    These transmissions occur automatically and contemporaneously with the user's interaction with Defendant's Website.

83.    As a result, Google receives the user's email address together with information indicating that the user has completed a medical intake process on Defendant's Website.

84.    Defendant knowingly designed its Website to embed sensitive user information within URLs that are transmitted to third-party tracking services, thereby causing the disclosure of users' Private Information to Google.

### f.  DEFENDANT'S TRACKING TECHNOLOGIES INTERCEPT, DUPLICATE, AND TRANSMIT USERS' COMMUNICATIONS.

85.    Defendant's source code manipulates users' browsers by instructing them to transmit their communications with Defendant to Google in real time.

86.    These transmissions effectively duplicate the communications between the user and Defendant and redirect them to Google without the user's knowledge.

87.    In doing so, Defendant caused users' communications—including the contents of those communications—to be intercepted and disclosed to Google.

88.    These communications include highly sensitive information, including users' participation in a medical intake process, their pursuit of prescription treatments, and their identifying information.

16

CLASS ACTION COMPLAINT

89. Defendant's Tracking Technologies thus function as hidden surveillance tools, allowing Google to receive and process users' communications at the moment they occur.

### g. DEFENDANT DISCLOSED IDENTIFIABLE HEALTH-RELATED INFORMATION TO GOOGLE.

90. The information disclosed to Google is personally identifiable and includes users' email addresses, which are transmitted in plaintext.

91. This identifying information is transmitted alongside contextual information reflecting the user's interaction with Defendant's Website, including that the user completed an intake process for medical treatment.

92. Google associates this information with persistent identifiers and incorporates it into user profiles used for analytics, marketing, and targeted advertising.

93. By transmitting users' Private Information to Google in this manner, Defendant enables Google to incorporate that information into its broader identity graph and advertising ecosystem.

### h. LACK OF CONSENT AND UNAUTHORIZED DISCLOSURE

94. Plaintiffs and Class Members were not aware that their Private Information would be transmitted to Google or any other third party as they interacted with Defendant's Website.

95. Defendant did not disclose that it embedded Tracking Technologies that would transmit users' communications and identifying information to Google.

96. To the contrary, Defendant affirmatively represented that users' information would "never [be] shared" and was "protected by HIPAA."

97. Plaintiffs and Class Members did not consent to, authorize, or permit Defendant to disclose their Private Information to Google or any other third party.

98. Any purported consent obtained through pre-checked boxes or similar mechanisms was not valid, informed, or legally effective.

### i. MEDVI'S REPRESENTATIONS AND USERS' REASONABLE EXPECTATION OF PRIVACY

#### i. Medvi Held Itself Out as Protecting Users' Health Information.

99.   Defendant holds itself out as a healthcare-adjacent platform that collects and processes sensitive personal and medical information in connection with telehealth services.

100. Through its Website, Defendant invites users to provide detailed personal and health-related information, including contact information, medical history, and other information necessary to evaluate eligibility for prescription treatments.

101. Defendant represents that this information will be treated as confidential and safeguarded in accordance with healthcare privacy standards.

102. In particular, Defendant provides users with a Notice of Privacy Practices and other disclosures invoking the privacy protections associated with the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").

103. These representations convey to users that their information will be handled in a manner consistent with healthcare confidentiality norms.

#### ii. Medvi Expressly Represented That Users' Information Would "Never Be Shared" and Was Protected by HIPAA.

104. At the time users are prompted to provide their personal and health-related information, Defendant presents an acknowledgment stating: "I understand that my information is never shared [and] is protected by HIPAA."

105. This representation is displayed contemporaneously with Defendant's request for users' contact information and initiation of the medical intake process.

106. The acknowledgment is pre-selected by default and does not require any affirmative, informed action by the user.

CLASS ACTION COMPLAINT



**FIGURE 4.** *Screenshot of intake acknowledgment showing "never shared" and "protected by HIPAA" language.*

**FIGURE 5.** *Screenshot of intake acknowledgment showing "never shared" and "protected by HIPAA" language, alongside a "HIPAA Compliant" logo.*

19

CLASS ACTION COMPLAINT

107. By presenting this statement, Defendant affirmatively represents that users' information will not be disclosed to third parties and will be protected in accordance with HIPAA.

108. These representations are clear, unqualified, and material to users' decision to provide sensitive information.

### iii. These Representations Created a Heightened and Objectively Reasonable Expectation of Privacy.

109. Based on Defendant's representations, users reasonably expect that their communications with Defendant—including information entered during the intake process—will remain confidential and will not be disclosed to third parties.

110. This expectation is particularly strong in the context of telehealth services, where users are asked to disclose sensitive health-related information in order to obtain medical treatment.

111. Defendant's express statements that user information is "never shared" and "protected by HIPAA" reinforce and heighten this expectation.

112. These representations go beyond general privacy policies and create a specific and unequivocal assurance that users' information will remain confidential.

113. As a result, Plaintiff and Class Members had an objectively reasonable expectation that their communications with Defendant would not be transmitted to third-party advertising or analytics platforms.

### iv. Medvi's Conduct Directly Contradicted Its Representations.

114. Contrary to its representations, Defendant configured its Website to transmit users' information to third parties, including Google, through embedded Tracking Technologies.

115. As described above, Defendant caused users' email addresses— embedded in the URL of the confirmation page—to be transmitted to Google-controlled endpoints contemporaneously with users' interactions with the Website.

116. These transmissions occurred at the same time Defendant represented that

20

CLASS ACTION COMPLAINT

users' information would "never [be] shared."

117. Defendant's conduct thus directly contradicts its express representations and violates users' reasonable expectations of privacy.

### v. Defendant's Representations Were Material and Misleading.

118. Defendant's statements regarding confidentiality and HIPAA protection were material to users' decision to provide their personal and health-related information.

119. A reasonable user would consider it important that their information would "never [be] shared" and would be protected by HIPAA when deciding whether to disclose sensitive information.

120. Defendant's failure to disclose that it would transmit users' information to third-party advertising platforms renders its representations false and misleading.

121. By making these representations while simultaneously disclosing users' information to third parties, Defendant engaged in deceptive and unfair conduct.

### vi. Any Purported Consent Was Not Valid or Informed.

122. Defendant did not obtain valid, informed consent from Plaintiffs or Class Members to disclose their communications or Private Information to Google or any other third party.

123. The acknowledgment presented by Defendant was pre-selected by default and did not require any affirmative, knowing, or voluntary agreement by the user.

124. Defendant did not clearly disclose that users' information—including their email addresses and healthcare-related interactions—would be transmitted to third-party advertising platforms.

125. As a result, Plaintiffs and Class Members did not knowingly or voluntarily consent to the interception or disclosure of their communications.

### vii. Defendant's Conduct Violates Established Privacy Norms and Supports Application of the Crime–Tort Exception.

126. Defendant's conduct violates well-established privacy norms governing

21

CLASS ACTION COMPLAINT

the confidentiality of health-related information, including those reflected in HIPAA and analogous privacy frameworks.

127. Defendant expressly invoked these standards in its representations to users, thereby reinforcing its obligation to safeguard users' information.

128. By intercepting and disclosing users' communications while simultaneously representing that such information would "never [be] shared," Defendant acted with an independent wrongful purpose beyond the act of interception itself.

129. This conduct constitutes an invasion of privacy and deceptive business practices and supports application of the crime–tort exception to statutory defenses under the Electronic Communications Privacy Act.

### viii. Users' Heightened and Reasonable Expectation of Privacy in Health-Related Communications

130. Plaintiffs and Class Members were aware of, and relied upon, Defendant's representations of confidentiality when they sought telehealth services through Defendant's Website.

131. At all relevant times, Plaintiffs and Class Members had a reasonable expectation that the Private Information they provided—including their contact information, responses to intake questions, and interactions reflecting their pursuit of medical treatment—would remain confidential and would not be disclosed to third parties for commercial or marketing purposes unrelated to their care.

132. These expectations reflect well-established societal norms. Studies and surveys consistently show that an overwhelming majority of Americans consider it a fundamental privacy right that companies obtain affirmative consent before collecting, sharing, or monetizing personal data.

133. For example, a Consumer Reports study found that 92% of Americans believe companies should be required to obtain consent before sharing consumer data

CLASS ACTION COMPLAINT

and should provide transparency regarding what data is collected.[2]

134. These expectations are heightened in the healthcare context, where individuals reasonably expect that information relating to their medical care will remain strictly confidential. That expectation is at its apex where the information concerns treatment decisions, medical conditions, or efforts to obtain prescription medications.

135. Information reflecting a user's participation in a telehealth intake process—particularly one involving prescription weight-loss medications or other medical treatments—can reveal or be used to infer an individual's health conditions, medical needs, and deeply personal decision-making.

136. Unauthorized disclosure of such information creates a substantial risk of stigma, judgment, or unwanted profiling. Third parties can use this information to categorize individuals, draw inferences about their health status, and target them with advertising or messaging based on those inferences.

137. A reasonable person would find the undisclosed tracking and disclosure of such sensitive healthcare-related information—including identified intake activity and associated personal identifiers—to third parties for commercial purposes to be highly offensive and an egregious invasion of privacy.

138. The privacy of such information was material to Plaintiffs and Class Members. Plaintiffs and Class Members would not have used Defendant's Website, would not have provided their Private Information, and would not have engaged with Defendant's services—or would have paid less—had they known that Defendant would disclose their Private Information to third parties for commercial purposes.

139. Plaintiffs' and Class Members' reasonable expectations of privacy are

---

[2] *Consumers Less Confident About Healthcare, Data Privacy, and Car Safety, New Survey Finds*, CONSUMER REPORTS (May 11, 2017), https://www.consumerreports.org/consumer-reports/consumers-lessconfident-about-healthcare-data-privacy-and-car-safety-a3980496907/ (last visited Dec. 29, 2025).

CLASS ACTION COMPLAINT

grounded in, among other things, Defendant's express representations that user information would "never [be] shared" and was "protected by HIPAA," its invocation of healthcare privacy standards, and well-established legal and societal norms protecting the confidentiality of health-related information.

### j. DEFENDANT'S CONDUCT VIOLATES HIPAA AND, AT MINIMUM, THE STANDARDS IT INVOKES.

#### i. HIPAA Governs the Confidentiality of Identifiable Health Information.

140. The Health Insurance Portability and Accountability Act of 1996 ("HIPAA") establishes national standards governing the privacy and security of individuals' medical information.

141. The HIPAA Privacy Rule protects "individually identifiable health information," also referred to as "protected health information" ("PHI"), which includes information that:

- relates to an individual's past, present, or future physical or mental health or condition, or the provision of health care; and

- identifies the individual or can reasonably be used to identify the individual.

*See* 45 C.F.R. § 160.103.

142. HIPAA applies to "covered entities," including health care providers that transmit health information electronically, as well as their "business associates," which create, receive, maintain, or transmit PHI on behalf of covered entities.

#### ii. The Information Disclosed by Defendant Qualifies as PHI.

143. The information disclosed by Defendant—including users' email addresses together with information indicating that the user completed a medical intake process for treatment—constitutes individually identifiable health information.

144. Health-related information combined with identifiers such as email addresses, URLs, and device identifiers falls squarely within HIPAA's definition of

CLASS ACTION COMPLAINT

PHI. *See* 45 C.F.R. §§ 160.103, 160.514.

145. Indeed, HIPAA expressly recognizes that identifiers such as:

- names;
- email addresses;
- URLs; and
- device identifiers

may render health-related information identifiable. 45 C.F.R. § 160.514.

146. Because Defendant transmitted users' email addresses together with information reflecting their pursuit of medical treatment, the information disclosed constitutes PHI.

### iii. To the Extent Defendant Is a Covered Entity or Business Associate, Its Conduct Violates HIPAA.

147. Defendant holds itself out as operating within the healthcare ecosystem, including by issuing a Notice of Privacy Practices and representing that users' information is "protected by HIPAA."

148. To the extent Defendant is a covered entity or business associate—or acts as one in connection with the provision of telehealth services—its conduct violates HIPAA.

149. HIPAA prohibits the disclosure of PHI for marketing or advertising purposes without a patient's prior written authorization. *See* 45 C.F.R. § 164.508.

150. Federal regulators have specifically warned that regulated entities may not use tracking technologies in a manner that results in the disclosure of PHI to third parties, including advertising platforms.

151. Defendant nevertheless disclosed users' PHI to Google through its Tracking Technologies, without obtaining any valid written authorization.

152. Such disclosures violate HIPAA's Privacy Rule and, where undertaken for commercial advantage, may also implicate HIPAA's criminal provisions. *See* 42 U.S.C. § 1320d-6.

25

CLASS ACTION COMPLAINT

**iv.    Even If Defendant Is Not a Covered Entity, It Invoked HIPAA and Is Bound by the Standards It Represented.**

153. Even if Defendant contends that it is not a HIPAA-covered entity, it expressly invoked HIPAA protections in its representations to users.

154. Defendant represented that users' information was "never shared" and "protected by HIPAA," thereby inducing users to believe that their information would be handled in accordance with HIPAA's confidentiality standards.

155. Having made these representations, Defendant cannot disclaim the obligations associated with them.

156. At a minimum, Defendant's conduct violates the privacy standards it expressly represented would govern its handling of users' information.

**v.    Defendant's Conduct Violates Established Privacy Norms and Industry Standards.**

157. The confidentiality of patient information is a foundational principle of healthcare and is reflected in widely recognized industry standards.

158. The American Medical Association's Code of Medical Ethics provides that information gathered in connection with patient care is confidential and may not be disclosed for commercial purposes without informed consent.

159. These principles apply regardless of the form in which the information is collected or stored, including through digital platforms.

160. Defendant's disclosure of users' health-related information to third-party advertising platforms for commercial purposes violates these well-established standards.

**vi.    Defendant's HIPAA Violations Support Application of the Crime–Tort Exception.**

161. Defendant's conduct—including the unauthorized disclosure of identifiable health information for commercial purposes—violates independent legal duties and privacy protections.

CLASS ACTION COMPLAINT

162. This conduct is wrongful independent of the interception itself and supports application of the crime–tort exception to the Electronic Communications Privacy Act.

163. Defendant's interception and disclosure of users' communications were undertaken for the purpose of exploiting those communications for commercial gain, in violation of the privacy standards it expressly invoked.

**k. Defendant Was Enriched and Benefitted from the Use of Tracking Technologies and Unauthorized Disclosures.**

164. Defendant implemented the Tracking Technologies on its Website for the purpose of enhancing its marketing, advertising efficiency, and user acquisition efforts.

165. Through these Tracking Technologies, Defendant transmitted users' Private Information—including identifying information and health-related interactions—to Google and other third-party advertising platforms.

166. Defendant used this information to measure user behavior, track conversions, and optimize its advertising campaigns, including by identifying users who completed the intake process and targeting similar users more likely to convert.

167. Retargeting is a form of online marketing that enables advertisers to target users based on their prior interactions with a website, including whether a user visited specific pages, submitted information, or completed a transaction.

168. Here, Defendant's Tracking Technologies transmitted information reflecting that a user completed a medical intake process to Google's advertising infrastructure, allowing Defendant to track conversions and improve the performance of its advertising campaigns.

169. This process allows Defendant to reduce customer acquisition costs, increase conversion rates, and more efficiently target prospective users.

170. The data transmitted to Google is not used solely for Defendant's benefit. Once received, Google incorporates that information into its broader advertising

27

CLASS ACTION COMPLAINT

ecosystem, where it is associated with persistent identifiers and used to build user profiles.

171. As a result, the Private Information disclosed by Defendant contributes to the development of detailed profiles that may be used for targeted advertising across Google's network and by other advertisers.

172. Defendant's use of Tracking Technologies enabled it to benefit from Google's advertising tools, including remarketing, audience segmentation, and conversion tracking, all of which depend on the transmission of user data.

173. These benefits were obtained through the unauthorized interception and disclosure of users' Private Information, including information reflecting their pursuit of medical treatment.

174. Defendant's Website does not require these Tracking Technologies to function or to provide telehealth services. Rather, they are implemented for marketing and commercial purposes.

175. By transmitting users' Private Information to Google in this manner, Defendant reduced its advertising costs and increased the effectiveness of its marketing efforts, while simultaneously invading the privacy of Plaintiffs and Class Members.

176. Defendant's conduct thus resulted in unjust enrichment and commercial gain derived from the unauthorized use and disclosure of users' Private Information.

l.   **Plaintiffs' and Class Members' Private Information Had Financial Value.**

177. Plaintiffs' Private Information has economic value and Defendant's disclosures harmed Plaintiffs and Class Members.

178. Google regularly uses the data that it acquires and then sells that information to advertising clients.

179. Plaintiffs' and Class Members' Private Information have considerable value as highly monetizable data especially insofar as it allows companies to gain

CLASS ACTION COMPLAINT

insight into their customers so that they can perform targeted advertising and boost their revenues.

180. Professor Paul M. Schwartz, writing in the Harvard Law Review, notes: "Personal information is an important currency in the new millennium. The monetary value of personal data is large and still growing, and corporate America is moving quickly to profit from the trend. Companies view this information as a corporate asset and have invested heavily in software that facilitates the collection of consumer information."[3]

181. Various reports have been conducted to identify the value of health data. For example, in 2023, the Value Examiner published a report entitled Valuing Healthcare Data. The report focused on the rise in providers, software firms and other companies that are increasingly seeking to acquire clinical patient data from healthcare organizations. The report cautioned providers that they must de-identify data and that purchasers and sellers of "such data should ensure it is priced at fair market value to mitigate any regulatory risk."[4]

182. Trustwave Global Security also published a report entitled The Value of Data. With respect to healthcare data records, the report found that they may be valued at up to $250 per record on the black market, compared to $5.40 for the next highest value record (a payment card).[5]

[3] Paul M. Schwartz, Property, Privacy, and Personal Data, 117 *Harv. L. Rev.* 2055, 2056-57 (2004).

[4] *See* Todd Zigrang & Jessica Bailey-Wheaton, *Valuing Healthcare Data*, Health Capital (2017), https://www.healthcapital.com/researchmaterialdocuments/publishedarticles/Valuing%20Healthcare%20Data.pdf.

[5] *See* Imprivata, *Hackers, Breaches, and the Value of Healthcare Data* (June 30, 2021), https://www.imprivata.com/blog/healthcare-data-new-prize-hackers (citing Trustwave, *The Value of Data* (2017), https://www.infopoint-

CLASS ACTION COMPLAINT

183. The value of health data has also been reported extensively in the media. For example, CNBC published an article in 2019 in which it observed that "[d]e-identified patient data has become its own small economy: There's a whole market of brokers who compile the data from providers and other health-care organizations and sell it to buyers."[6]

184. Similarly, Time Magazine published an article in 2017 titled "How Your Medical Data Fuels a Hidden Multi-Billion Dollar Industry" in which it described the extensive market for health data and observed that the market for information was both lucrative and a significant risk to privacy.[7]

185. Indeed, numerous marketing services and consultants offering advice to companies on how to build their email and mobile phone lists—including those seeking to take advantage of targeted marketing—direct putative advertisers to offer consumers something of value in exchange for their personal information. "No one is giving away their email address for free. Be prepared to offer a book, guide, webinar, course or something else valuable."[8]

186. There is also a market for data in which consumers can participate. Personal information has been recognized by courts as extremely valuable. *See, e.g.*,

security.de/media/TrustwaveValue_of_Data_Report_Final_PDF.pdf)   (last   visited Dec. 29, 2025).

[6] *See* Christina Farr, *Hospital Execs Say They Are Getting Flooded with Requests for Your Health Data*, CNBC (Dec. 18, 2019), https://www.cnbc.com/2019/12/18/hospital-execs-say-theyre-flooded-with-requests-for-your-health-data.html (last visited Dec. 29, 2025).

[7] *See* Adam Tanner, *How Your Medical Data Fuels a Hidden Multi-Billion Dollar Industry*, Time (Jan. 9, 2017), https://time.com/4588104/medical-data-industry/ (last visited Dec. 29, 2025).

[8] Vero, *Twitter Lead Generation Cards*, https://www.getvero.com/resources/twitter-lead-generation-cards/ (last visited Dec. 29, 2025).

CLASS ACTION COMPLAINT

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 462 (D. Md. 2020) ("Neither should the Court ignore what common sense compels it to acknowledge—the value that personal identifying information has in our increasingly digital economy. Many companies, like Marriott, collect personal information. Consumers too recognize the value of their personal information and offer it in exchange for goods and services.").

187. This economic value has been leveraged largely by corporations who pioneered the methods of its extraction, analysis and use.

188. However, the data also has economic value to Internet users. Market exchanges have sprung up where individual users like Plaintiffs herein can sell or monetize their own data.

189. Several companies, such as Google, Nielsen, UpVoice, HoneyGain and SavvyConnect, have products through which they pay consumers for a license to track their data.

190. Additionally, healthcare data is extremely valuable to bad actors. Health care records may be valued at up to $250 per record on the black market.[9]

191. These rates are assumed to be discounted because they do not operate in competitive markets, but rather, in an illegal marketplace. If a criminal can sell other Internet users' stolen data, surely Internet users can sell their own data.

192. Healthcare data is incredibly valuable because, unlike a stolen credit card that can be easily canceled, most people are unaware that their medical information has been sold. Once it has been detected, it can take years to undo the damage caused.

193. In short, there is a quantifiable economic value to Internet users' data that is greater than zero. The exact number will be a matter for experts to determine.

[9] *See* Imprivata, *Hackers, Breaches, and the Value of Healthcare Data* (June 30, 2021), https://www.imprivata.com/blog/healthcare-data-new-prize-hackers (citing Trustwave, *The Value of Data* (2017), https://www.infopoint-security.de/media/TrustwaveValue_of_Data_Report_Final_PDF.pdf) (last visited Dec. 29, 2025).

31

CLASS ACTION COMPLAINT

194. Defendant gave away Plaintiffs' and Class Members' communications and transactions on its Website without permission.

195. The unauthorized access to Plaintiffs' and Class Members' personal and Private Information has diminished the value of that information, resulting in harm to Website users, including Plaintiffs and Class Members.

## PLAINTIFF ALLEGATIONS

### *Experience of Plaintiff E.P.*

196. Plaintiff E.P. is a resident of Florida who used Defendant's Website to seek telehealth services for prescription weight-loss treatments, including from approximately August 2025 through November 2025.

197. In connection with using Defendant's services, Plaintiff E.P. was required to complete an online intake form on Defendant's Website and provide personal and health-related information as a condition of proceeding with treatment.

198. Without Plaintiff E.P.'s knowledge or consent, when he completed the intake process and interacted with Defendant's Website, the Tracking Technologies Defendant deployed transmitted his Private Information to third parties, including Google.

199. The information transmitted included, among other things, (1) his status as a user seeking medical treatment, (2) the fact that he completed a medical intake process, (3) information reflecting his treatment-related interactions with Defendant's Website, and (4) identifying information, including his email address embedded within webpage URLs.

200. Plaintiff E.P. has used and continues to use the same device(s) to access Defendant's Website throughout the relevant period.

201. Along with this information, Defendant transmitted data that allowed third parties to identify Plaintiff E.P., including persistent identifiers, device and browser information, and other data sufficient to associate his identity with his interactions on Defendant's Website.

202. As a result of Defendant's deployment of Tracking Technologies, third parties were able to link Plaintiff E.P.'s identity with his health-related activity and use that information for advertising, analytics, and profiling purposes.

**_Experience of Plaintiff J.S._**

203. Plaintiff J.S. is a resident of Texas who used Defendant's Website to seek telehealth services for prescription weight-loss treatments, including from approximately November 2025 through December 2025.

204. In connection with using Defendant's services, Plaintiff J.S. was required to complete an online intake form on Defendant's Website and provide personal and health-related information as a condition of proceeding with treatment.

205. Without Plaintiff J.S.'s knowledge or consent, when he completed the intake process and interacted with Defendant's Website, the Tracking Technologies Defendant deployed transmitted his Private Information to third parties, including Google.

206. The information transmitted included, among other things, (1) his status as a user seeking medical treatment, (2) the fact that he completed a medical intake process, (3) information reflecting his treatment-related interactions with Defendant's Website, and (4) identifying information, including his email address embedded within webpage URLs.

207. Plaintiff J.S. has used and continues to use the same device(s) to access Defendant's Website throughout the relevant period.

208. Along with this information, Defendant transmitted data that allowed third parties to identify Plaintiff J.S., including persistent identifiers, device and browser information, and other data sufficient to associate his identity with his interactions on Defendant's Website.

209. As a result of Defendant's deployment of Tracking Technologies, third parties were able to link Plaintiff J.S.'s identity with his health-related activity and use that information for advertising, analytics, and profiling purposes.

CLASS ACTION COMPLAINT

*Experience of Plaintiff M.A.*

210. Plaintiff M.A. is a resident of Texas who used Defendant's Website to seek telehealth services for prescription weight-loss treatments, including from approximately November 2025 through December 2025.

211. In connection with using Defendant's services, Plaintiff M.A. was required to complete an online intake form on Defendant's Website and provide personal and health-related information as a condition of proceeding with treatment.

212. Without Plaintiff M.A.'s knowledge or consent, when she completed the intake process and interacted with Defendant's Website, the Tracking Technologies Defendant deployed transmitted her Private Information to third parties, including Google.

213. The information transmitted included, among other things, (1) her status as a user seeking medical treatment, (2) the fact that she completed a medical intake process, (3) information reflecting her treatment-related interactions with Defendant's Website, and (4) identifying information, including her email address embedded within webpage URLs.

214. Plaintiff M.A. has used and continues to use the same device(s) to access Defendant's Website throughout the relevant period.

215. Along with this information, Defendant transmitted data that allowed third parties to identify Plaintiff M.A., including persistent identifiers, device and browser information, and other data sufficient to associate her identity with her interactions on Defendant's Website.

216. As a result of Defendant's deployment of Tracking Technologies, third parties were able to link Plaintiff M.A.'s identity with her health-related activity and use that information for advertising, analytics, and profiling purposes.

*Experiences Common to Each Plaintiff*

217. Plaintiffs and Class Members reasonably expected that their communications with Defendant via the Website were confidential, solely between

34

CLASS ACTION COMPLAINT

themselves and Defendant, and would not be transmitted to or intercepted by third parties.

218. However, as a result of Defendant's implementation of Tracking Technologies on its Website, Plaintiffs' and Class Members' Private Information was intercepted, disclosed, viewed, and used by third parties, including Google.

219. Defendant transmitted identifying information—including users' email addresses, embedded in webpage URLs—to Google, along with information reflecting users' interactions with the Website, including that they completed a medical intake process in connection with seeking treatment.

220. Defendant also transmitted persistent identifiers, device information, and browsing data that enabled third parties to associate these interactions with specific users.

221. Plaintiffs and Class Members never consented to the disclosure or use of their Private Information by third parties, nor to Defendant enabling third parties to access, analyze, or use their communications.

222. Plaintiffs and Class Members did not intend for any third party—including Google—to be a party to their communications with Defendant, particularly those involving sensitive health-related information.

223. Through the Tracking Technologies embedded on Defendant's Website, Defendant transmitted Plaintiffs' and Class Members' Private Information to, at a minimum, Google, and potentially to additional third parties.

224. As a result of these disclosures, Plaintiffs and Class Members were exposed to targeted advertising and profiling based on their interactions with Defendant's Website, including inferences regarding their medical interests and treatment-related activity.

225. By making these disclosures without consent, Defendant invaded Plaintiffs' and Class Members' privacy and unlawfully disclosed their Private Information.

35

CLASS ACTION COMPLAINT

226. Defendant did not adequately disclose that it would transmit Plaintiffs' and Class Members' Private Information to Google or other third parties through Tracking Technologies.

227. Plaintiffs and Class Members have a continuing interest in ensuring that their Private Information— which, upon information and belief, remains in Defendant's possession and in the possession of third parties— is protected from further unauthorized use or disclosure.

## TOLLING

228. The applicable statutes of limitation have been tolled because of Defendant's knowing and active concealment of the facts alleged herein.

229. Defendant deliberately embedded Tracking Technologies within its Website in a manner that was invisible to Plaintiffs and Class Members, providing no indication that their Private Information—including identifying information and health-related interactions—was being disclosed to third parties.

230. Defendant intentionally concealed that, by interacting with the Website and completing the intake process, Plaintiffs' and Class Members' Private Information would be intercepted, collected, used by, and disclosed to third parties, including Google.

231. This concealment was particularly effective because the disclosures occurred through technical mechanisms not accessible to ordinary users, including hidden HTTP requests and transmissions executed through the Website's source code.

232. For example, Defendant configured its Website to embed users' email addresses within webpage URLs that were automatically transmitted to third-party endpoints, a practice that is not visible to users and cannot be detected without specialized tools.

233. Defendant's concealment of these practices—including the disclosure of identifying information and health-related interactions to third parties—violated the

36
CLASS ACTION COMPLAINT

duties Defendant owed to Plaintiffs and Class Members and prevented them from discovering their claims.

234. Plaintiffs and Class Members could not, with reasonable diligence, discover the full scope of Defendant's conduct because Defendant did not disclose the existence, nature, or extent of its Tracking Technologies or data-sharing practices.

235. The earliest Plaintiffs and Class Members could have discovered Defendant's conduct was when the underlying tracking and data transmissions were analyzed using specialized tools capable of capturing network traffic.

236. All applicable statutes of limitation are further tolled under the discovery rule because Plaintiffs and Class Members did not know, and could not reasonably have known, of Defendant's wrongful conduct.

237. Defendant's conduct also constitutes a continuing violation and continuing tort, as Defendant's Tracking Technologies repeatedly intercepted and disclosed Plaintiffs' and Class Members' Private Information each time they interacted with the Website.

238. Defendant was under a duty to disclose the nature and significance of its data collection and sharing practices, including its transmission of Private Information to third parties, but failed to do so.

239. Accordingly, Defendant is estopped from asserting any statute of limitations defense.

## CLASS ACTION ALLEGATIONS

240. Plaintiffs bring their action on behalf of themselves and on behalf of all other persons similarly situated ("the Class") pursuant to Rule 23(b)(2), 23(b)(3) and 23(c)(4) of the Federal Rules of Civil Procedure.

The Nationwide Class that Plaintiffs seek to represent is defined as:

> All individuals residing in the United States who used Defendant's Website to complete a medical intake form in connection with seeking treatment through Defendant's Website.

The California Subclass that Plaintiffs seek to represent is defined as:

All individuals residing in the State of California who used Defendant's Website to complete a medical intake form in connection with seeking treatment through Defendant's Website.

241. The Nationwide Class and California Subclass are collectively referred to as the "Class" unless otherwise and more specifically identified.

242. Excluded from the Class are Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant has a controlling interest, any Defendant officer or director, any successor or assign, and any Judge who adjudicates their case, including their staff and immediate family.

243. Plaintiffs reserve the right to modify or amend the definition of the proposed class before the Court determines whether certification is appropriate.

244. Numerosity, Fed R. Civ. P. 23(a)(1). The Class Members are so numerous that joinder of all members is impracticable. Upon information and belief, there are hundreds of thousands of individuals whose PII and PHI may have been improperly disclosed to Google, and the Class is identifiable within Defendant's records.

245. Commonality, Fed. R. Civ. P. 23(a)(2) and (b)(3). Questions of law and fact common to the Class exist and predominate over any questions affecting only individual Class Members because Defendant engaged in a uniform course of conduct by implementing the same Tracking Technologies across its Website, which operated in the same manner for all users. These questions are capable of classwide resolution because they can be answered through common evidence, including Defendant's source code, configuration of Tracking Technologies, and standardized data flows applicable to all Class Members. These common questions include, without limitation:

a. Whether Defendant implemented Tracking Technologies, including Google Ads, DoubleClick, Google Analytics, and related tools, that caused

users' interactions with Defendant's Website to be transmitted to Google;

b. Whether Defendant's Tracking Technologies transmitted users' interactions—including webpages visited, intake activity, and confirmation of completed medical intake processes—together with identifying information such as email addresses and persistent identifiers, to Google contemporaneously with those interactions;

c. Whether the information transmitted to Google—including URLs containing user-provided information and data reflecting users' healthcare-related interactions—constituted the "contents" of communications or, alternatively, dialing, routing, addressing, or signaling information;

d. Whether Defendant's conduct constituted an interception, acquisition, or disclosure of Plaintiffs' and Class Members' communications;

e. Whether Defendant disclosed Plaintiffs' and Class Members' Private Information to Google and whether such disclosure extended into Google's broader advertising and identity-resolution ecosystem;

f. Whether Defendant obtained informed consent from Plaintiffs and Class Members for the transmission of their communications and Private Information to Google or any other third party;

g. Whether Plaintiffs and Class Members had a reasonable expectation of privacy in their interactions with Defendant's Website, including completing intake forms and seeking medical treatment;

h. Whether Defendant's conduct constitutes an intrusion upon seclusion or public disclosure of private facts under applicable law;

i. Whether Defendant's conduct was highly offensive to a reasonable person, particularly in light of the sensitive health-related nature of the information at issue;

j. Whether Defendant's representations—including that users' information would "never [be] shared" and was "protected by HIPAA"—were false,

misleading, or deceptive;

k.    Whether Defendant's conduct was unlawful, unfair, or deceptive under applicable law;

l.    Whether Defendant acted intentionally or with reckless disregard in implementing and operating the Tracking Technologies at issue;

m.    Whether Plaintiffs and Class Members are entitled to statutory, actual, consequential, or nominal damages as a result of Defendant's conduct; and

n.    Whether Plaintiffs and Class Members are entitled to injunctive and declaratory relief to prevent Defendant's ongoing collection, transmission, and use of their Private Information.

246.    <u>Typicality</u>, Fed. R. Civ. P. 23(a)(3). Plaintiffs' claims are typical of those of other Class Members because all had their Private Information compromised as a result of Defendant's incorporation of the Tracking Technologies, due to Defendant's misfeasance.

247.    <u>Adequacy</u>, Fed. R. Civ. P. 23(a)(4). Plaintiffs will fairly and adequately represent and protect the interests of the Class Members in that Plaintiffs have no disabling conflicts of interest that would be antagonistic to those of the other Members of the Class. Plaintiffs seek no relief that is antagonistic or adverse to the Members of the Class and the infringement of the rights and the damages Plaintiffs have suffered are typical of other Class Members. Plaintiffs have also retained counsel experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously.

248.    <u>Superiority and Manageability</u>, Fed. R. Civ. P. 23(b)(3). Class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence,

CLASS ACTION COMPLAINT

effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against a large corporation like Defendant. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

249. <u>Policies Generally Applicable to the Class</u>. Fed. R. Civ. P. 23(b)(2). This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's policies challenged herein apply to and affect Class Members uniformly and Plaintiffs' challenge of these policies hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiffs.

250. The nature of this action and the nature of laws available to Plaintiffs and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiffs and Class Members for the wrongs alleged because Defendant would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiffs were exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

251. The litigation of the claims is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class

Members demonstrate that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

252. Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

253. Unless a class-wide injunction is issued, Defendant may continue disclosing the Private Information of Class Members, Defendant may continue to refuse to provide proper notification to Class Members regarding the practices complained of herein, and Defendant may continue to act unlawfully as set forth in this Complaint.

254. Further, Defendant has acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

255. Issue Certification, Fed. R. Civ. P. 23(c)(4). In the alternative, and in addition to certification of the Class as a whole, certification of particular issues is appropriate because resolution of these common issues on a classwide basis will materially advance the disposition of this litigation. These issues are capable of determination through common proof, including Defendant's source code, configuration of its Tracking Technologies, and standardized data flows applicable to all Class Members. These issues do not depend on individualized user behavior, but instead turn on Defendant's uniform implementation of Tracking Technologies and standardized data collection practices. Such issues include, but are not limited to:

a. Whether Defendant implemented Tracking Technologies, including Google Ads, DoubleClick, Google Analytics, and related tools, that caused users' interactions with Defendant's Website to be transmitted to Google;

b. Whether Defendant's Tracking Technologies transmitted users' interactions—including webpages visited, intake activity, and

42

CLASS ACTION COMPLAINT

confirmation of completed medical intake processes—together with identifying information such as email addresses and persistent identifiers, to Google contemporaneously with those interactions;

c. Whether the information transmitted to Google—including URLs containing user-provided information and data reflecting users' healthcare-related interactions—constitutes the "contents" of communications or, alternatively, dialing, routing, addressing, or signaling information;

d. Whether Defendant's conduct constituted an interception, acquisition, or disclosure of Plaintiffs' and Class Members' communications;

e. Whether Defendant disclosed Plaintiffs' and Class Members' Private Information to Google and whether such disclosure extended into Google's broader advertising and identity-resolution ecosystem;

f. Whether Defendant obtained informed consent from Plaintiffs and Class Members for the transmission of their communications and Private Information to Google or any other third party;

g. Whether Plaintiffs' and Class Members' interactions with Defendant's Website, including completing intake forms and seeking medical treatment, involve private matters entitled to protection under applicable privacy laws;

h. Whether Defendant's conduct constitutes an intrusion upon seclusion or public disclosure of private facts;

i. Whether Defendant's conduct was highly offensive to a reasonable person in light of the sensitive health-related nature of the information at issue;

j. Whether Defendant acted intentionally or with reckless disregard in implementing and operating the Tracking Technologies at issue; and

43

CLASS ACTION COMPLAINT

k.     Whether Defendant's design and configuration of its Website—including embedding user identifiers within URLs transmitted to third parties—caused the disclosure of Plaintiffs' and Class Members' Private Information.

## CAUSES OF ACTION

## COUNT I

## VIOLATIONS OF ELECTRONIC COMMUNICATIONS PRIVACY ACT

## 18 U.S.C. § 2511(1) *et seq.*

## UNAUTHORIZED INTERCEPTION, USE AND DISCLOSURE

## (On Behalf of Plaintiffs & the Nationwide Class)

256.  Plaintiffs, on behalf of themselves and the Class designated immediately above (for the purposes of this Count, "Class Members"), repeat and re-allege each and every allegation contained in the Complaint as if fully set forth herein.

257. The ECPA prohibits the intentional interception of the content of any electronic communication. 18 U.S.C. § 2511.

258. The ECPA protects both sending and receipt of communications.

259.  18 U.S.C. § 2520(a) provides a private right of action to any person whose wire or electronic communications are intercepted, disclosed, or intentionally used in violation of Chapter 119.

260. **Electronic Communications**. The transmission of Private Information between Plaintiffs and Class Members and Defendant via Defendant's Website constitutes "electronic communications" within the meaning of 18 U.S.C. § 2510(12).

261. These communications include the transfer of data, signals, and information transmitted by wire or electronic systems in interstate commerce.

262. **Content.** The ECPA defines "contents" as "any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8).

263. The information transmitted by Defendant—including users' email addresses, webpage URLs reflecting completion of a medical intake process, and

44

CLASS ACTION COMPLAINT

associated health-related interactions—constitutes the contents of communications.

264. **Interception.** The ECPA defines the interception as the "acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device" and "contents … include any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(4), (8).

265. **Devices**. The following constitute "devices" within the meaning of 18 U.S.C. § 2510(5):

    a. The Google Tracking Technologies implemented on Defendant's Website;

    b. Plaintiffs' and Class Members' web browsers;

    c. Plaintiffs' and Class Members' computing devices;

    d. Defendant's web servers; and

    e. The code and scripts embedded by Defendant that effectuate the transmission and acquisition of communications.

266. **Interception, Disclosure, and Use.** Whenever Plaintiffs and Class Members interacted with Defendant's Website, Defendant, through Tracking Technologies embedded and operating on its Website, contemporaneously and intentionally intercepted, disclosed, and endeavored to disclose the contents of Plaintiffs' and Class Members' electronic communications to third parties, including Google, without authorization or consent. 18 U.S.C. § 2511(1)(c).

267. Defendant caused Plaintiffs' and Class Members' browsers to transmit the contents of their communications—including identifying information such as email addresses embedded in webpage URLs and information reflecting completion of a medical intake process—to Google-controlled endpoints in real time.

268. These transmissions occurred contemporaneously with Plaintiffs' and Class Members' communications with Defendant and while those communications were in transit.

45

CLASS ACTION COMPLAINT

269. Defendant also intentionally used, and endeavored to use, the contents of Plaintiffs' and Class Members' communications for purposes unrelated to providing healthcare services, including advertising, marketing optimization, and user profiling. 18 U.S.C. § 2511(1)(d)

270. **Nature of Intercepted Information.** The intercepted communications include, but are not limited to:

- users' email addresses;
- webpage URLs reflecting completion of intake and treatment-related activity;
- information indicating that a user sought medical treatment; and
- associated identifiers and device information.

271. This information is personally identifiable and reveals sensitive health-related interactions.

272. **Lack of Consent.** Plaintiffs and Class Members did not authorize Defendant to intercept, disclose, or use the contents of their communications.

273. Any purported consent obtained by Defendant was not valid, informed, or legally effective, including because Defendant relied on pre-checked acknowledgments and failed to disclose its data-sharing practices.

274. **Unauthorized Purpose.** Defendant intentionally intercepted and disclosed Plaintiffs' and Class Members' communications for the purpose of committing tortious and unlawful acts, including invasion of privacy and deceptive business practices.

275. Defendant's conduct further violated the privacy standards it expressly invoked, including its representations that users' information would "never [be] shared" and was "protected by HIPAA."

276. To the extent applicable, Defendant's conduct also violates federal privacy protections governing identifiable health information, including 42 U.S.C. § 1320d-6.

CLASS ACTION COMPLAINT

277. Accordingly, the party exception under 18 U.S.C. § 2511(2)(d) does not apply.

278. **Intent.** Defendant acted intentionally, or at minimum with reckless disregard, in implementing and operating the Tracking Technologies that intercepted and disclosed Plaintiffs' and Class Members' communications.

279. Defendant knew or had reason to know that its Tracking Technologies would cause Plaintiffs' and Class Members' communications to be transmitted to third parties.

280. **Damages.** As a direct and proximate result of Defendant's conduct, Plaintiffs and Class Members have suffered damages, including:

    a. invasion of privacy and loss of confidentiality of their sensitive information;

    b. exposure of their identity in connection with health-related activity;

    c. economic value derived from their information without compensation;

    d. diminution in value of their Private Information; and

    e. emotional distress and loss of control over their personal information.

281. **Relief.** Plaintiffs and Class Members are entitled to all available relief under 18 U.S.C. § 2520, including statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000, equitable and declaratory relief, compensatory and punitive damages, and reasonable attorneys' fees and costs.

**<u>COUNT II</u>**

**INVASION OF PRIVACY – PUBLIC DISCLOSURE OF PRIVATE FACTS UNDER CALIFORNIA LAW**

**(On Behalf of Plaintiffs & the Nationwide Class, or in the alternative, the California Subclass)**

282. Plaintiffs, on behalf of themselves and the Class designated immediately above (for the purposes of this Count, "Class Members"), repeat and re-allege each and every allegation contained in the Complaint as if fully set forth herein.

47

CLASS ACTION COMPLAINT

283. Plaintiffs and Class Members disclosed private and sensitive information to Defendant in the course of seeking telehealth services, including completing intake forms and pursuing medical treatment through Defendant's Website.

284. This information included confidential details regarding Plaintiffs' and Class Members' healthcare interests, treatment-seeking behavior, and interactions with Defendant's Website, which constitute private facts not intended for public dissemination.

285. Defendant publicly disclosed these private facts by transmitting Plaintiffs' and Class Members' healthcare-related interactions and identifying information to third parties, including Google, through embedded Tracking Technologies operating on Defendant's Website.

286. This disclosure occurred when Defendant's Website caused Plaintiffs' and Class Members' browsers to transmit information—including webpage URLs reflecting completion of a medical intake process, user-provided identifiers such as email addresses, and associated data—to Google contemporaneously with their interactions.

287. The disclosure was not limited to a confidential or restricted recipient. Google operates a large-scale data collection, profiling, and advertising ecosystem that aggregates user data and uses it to create and refine user profiles for marketing, analytics, and targeted advertising purposes.

288. Through this system, the information disclosed by Defendant was incorporated into Google's broader data infrastructure and made available for use in audience creation, behavioral targeting, and advertising activities across platforms and services beyond Defendant's Website.

289. As a result, Defendant's disclosure of Plaintiffs' and Class Members' private information was effectively public, in that it exposed their healthcare-related data to a system designed for widespread use, integration, and dissemination beyond Defendant's control.

CLASS ACTION COMPLAINT

290. Google incorporates such data into profiles that are used across its advertising ecosystem and by third parties for analytics, audience targeting, and marketing purposes. As a result, and due to Defendant's intentional implementation of Tracking Technologies, Plaintiffs' and Class Members' health-related interactions and identifying information were disseminated beyond the initial recipient into a broader network of entities and uses.

291. Courts have recognized that disclosures into digital advertising ecosystems—where user data is aggregated, profiled, and made available for use across multiple contexts—can satisfy the publicity element of a public disclosure of private facts claim.

292. The private facts disclosed—relating to Plaintiffs' and Class Members' pursuit of medical treatment, completion of intake processes, and associated identifying information—are highly sensitive and would be highly offensive to a reasonable person if disclosed in this manner.

293. The disclosed information is not of legitimate public concern.

294. Defendant acted intentionally, or at a minimum with reckless disregard, in implementing Tracking Technologies that disclosed Plaintiffs' and Class Members' private information to Google for advertising, analytics, and profiling purposes.

295. As a direct and proximate result of Defendant's conduct, Plaintiffs and Class Members suffered harm, including invasion of privacy, loss of confidentiality, and loss of control over their personal and health-related information.

296. Plaintiffs and Class Members seek compensatory damages, injunctive relief, and all other relief available under the law.

//

//

//

//

49

CLASS ACTION COMPLAINT

## COUNT III

## INVASION OF PRIVACY - INTRUSION UPON SECLUSION UNDER CALIFORNIA LAW

**(On Behalf of Plaintiffs & the Nationwide Class, or in the alternative, the California Subclass)**

297. Plaintiffs, on behalf of themselves and the Class designated immediately above (for the purposes of this Count, "Class Members"), repeat and re-allege each and every allegation contained in the Complaint as if fully set forth herein.

298. Plaintiffs and Class Members disclosed private and sensitive information to Defendant in the course of seeking telehealth services, including completing intake forms and pursuing medical treatment through Defendant's Website.

299. This information included confidential details regarding Plaintiffs' and Class Members' healthcare interests, treatment-seeking behavior, and interactions with Defendant's Website.

300. Plaintiffs and Class Members had a reasonable expectation that these communications would remain private and would not be intercepted, monitored, or accessed by third parties.

301. Defendant intentionally intruded upon Plaintiffs' and Class Members' private affairs by embedding Tracking Technologies into its Website that caused Plaintiffs' and Class Members' communications to be intercepted and transmitted to third parties, including Google, in real time.

302. Specifically, Defendant configured its Website to cause Plaintiffs' and Class Members' browsers to transmit the contents of their communications—including webpage URLs reflecting completion of a medical intake process and identifying information such as email addresses—to Google contemporaneously with their interactions.

303. These transmissions occurred automatically, without Plaintiffs' or Class Members' knowledge, and while their communications with Defendant were in

50

CLASS ACTION COMPLAINT

transit.

304. Defendant's Tracking Technologies functioned as surveillance tools that duplicated and redirected Plaintiffs' and Class Members' communications to third parties at the moment those communications occurred.

305. Defendant's conduct is analogous to secretly recording or wiretapping a private conversation between a patient and a healthcare provider.

306. This conduct constitutes an intentional intrusion into Plaintiffs' and Class Members' private communications and seclusion.

307. The intrusion was highly offensive to a reasonable person, particularly given the sensitive nature of the information at issue, which concerns individuals' pursuit of medical treatment and associated identifying information.

308. A reasonable person would not expect that their communications with a telehealth platform—including the act of completing a medical intake form—would be monitored and transmitted to third-party advertising platforms.

309. Defendant acted intentionally, or at a minimum with reckless disregard, in implementing and operating the Tracking Technologies that enabled this intrusion.

310. Defendant's conduct was not justified by any legitimate business necessity, as the Tracking Technologies were not required to provide telehealth services and were instead used for advertising, analytics, and profiling purposes.

311. As a direct and proximate result of Defendant's intrusion, Plaintiffs and Class Members suffered harm, including invasion of privacy, loss of control over their personal and health-related information, and emotional distress.

312. Plaintiffs and Class Members seek compensatory damages, injunctive relief, and all other relief available under the law.

//

//

//

//

CLASS ACTION COMPLAINT

## COUNT IV

### INVASION OF PRIVACY—CALIFORNIA CONSTITUION

### ART. 1 § 1

**(On behalf of Plaintiffs & the Nationwide Class, or in the alternative, the California Subclass)**

313. Plaintiffs, on behalf of themselves and the Class designated immediately above (for the purposes of this Count, "Class Members"), repeat and re-allege each and every allegation contained in the Complaint as if fully set forth herein.

314. Plaintiffs and Class Members have a legally protected privacy interest in: (1) preventing the unauthorized dissemination and misuse of their sensitive, confidential communications and health-related information; and (2) conducting personal activities—including seeking medical treatment—without unwanted observation, interception, or intrusion.

315. This includes the right to visit and interact with websites offering telehealth services without having their communications intercepted or transmitted to third parties without their knowledge or consent.

316. Plaintiffs and Class Members had a reasonable expectation of privacy in their communications with Defendant, including the information they provided and actions they took while completing intake forms and seeking medical treatment through Defendant's Website.

317. Defendant intentionally invaded Plaintiffs' and Class Members' privacy by implementing Tracking Technologies that intercepted and transmitted their communications and identifying information—including email addresses embedded in webpage URLs and information reflecting completion of a medical intake process—to third parties, including Google.

318. Defendant's conduct resulted in the contemporaneous transmission of Plaintiffs' and Class Members' private communications to Google through advertising and analytics infrastructure, without authorization or meaningful consent.

52

CLASS ACTION COMPLAINT

319. Plaintiffs and Class Members did not authorize Defendant to intercept, record, or transmit their private communications or health-related information to third parties.

320. Defendant's conduct is analogous to secretly recording or wiretapping a patient's communication with a healthcare provider.

321. Defendant's invasion of privacy is serious in nature, scope, and impact. It involves the interception and disclosure of sensitive health-related information and identifying data in connection with Plaintiffs' and Class Members' efforts to obtain medical treatment.

322. Defendant's conduct constitutes an egregious breach of social norms and expectations surrounding the confidentiality of health-related information and communications with healthcare-related platforms.

323. The intrusion is highly offensive to a reasonable person, particularly given Defendant's representations that users' information would "never [be] shared" and was "protected by HIPAA."

324. Defendant acted intentionally, or at a minimum with reckless disregard, in implementing and operating the Tracking Technologies that invaded Plaintiffs' and Class Members' privacy.

325. As a direct and proximate result of Defendant's conduct, Plaintiffs and Class Members have suffered harm and injury, including invasion of their constitutionally protected privacy rights.

326. Plaintiffs and Class Members have been damaged as a direct and proximate result of Defendant's conduct and are entitled to recover damages and other relief.

327. Plaintiffs and Class Members seek injunctive relief prohibiting Defendant from continuing to intercept, transmit, or otherwise misuse their Private Information.

328. Plaintiffs and Class Members are further entitled to punitive damages due to the willful, malicious, and conscious disregard of their privacy rights demonstrated

53

by Defendant's conduct.

329. Plaintiffs seek all other relief as the Court may deem just, proper, and available under Article I, Section 1 of the California Constitution.

## COUNT V

## NEGLIGENCE UNDER CALIFORNIA LAW

**(On behalf of Plaintiffs & the Nationwide Class, or in the alternative, on behalf of the California Subclass)**

330. Plaintiffs, on behalf of themselves and the Class designated immediately above (for the purposes of this Count, "Class Members"), repeat and re-allege each and every allegation contained in the Complaint as if fully set forth herein.

331. Defendant owed Plaintiffs and Class Members a duty to exercise reasonable care in collecting, maintaining, using, and safeguarding their Private Information, including sensitive health-related information, and to refrain from disclosing the contents of their communications without authorization.

332. This duty arises from, *inter alia*, Defendant's role as a telehealth platform facilitating medical services, its representations and policies regarding user confidentiality, the foreseeability that unauthorized disclosures of health-related information would cause harm, applicable California law, and common law principles governing privacy and confidentiality.

333. This duty is further informed by widely recognized privacy standards governing health-related information, including the requirements and expectations embodied in the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and its implementing regulations.

334. While HIPAA does not provide a private right of action, it reflects the standard of care applicable to entities that collect and process health-related information and underscores the well-established expectation that such information and communications will remain confidential and not be disclosed for non-treatment or non-operational purposes without authorization.

335. Plaintiffs and Class Members had reasonable and well-founded expectations of privacy in their communications with Defendant, including communications exchanged through Defendant's Website concerning medical conditions, treatment-seeking behavior, and eligibility for prescription treatments—matters that are particularly sensitive and widely understood to be private.

336. Defendant breached its duties by, among other things, designing, implementing, and operating its Website to include Tracking Technologies that intercepted, disclosed, and transmitted Plaintiffs' and Class Members' communications and Private Information to third parties without authorization.

337. These disclosures included the contents of communications and associated identifiers—such as email addresses embedded in webpage URLs—that enabled third parties to attribute such information to specific individuals.

338. Defendant further breached its duties by failing to implement reasonable safeguards, controls, and oversight to prevent such disclosures, despite the known and foreseeable risks associated with deploying third-party tracking technologies on webpages involving sensitive health-related information.

339. Industry guidance, regulatory enforcement actions, and Defendant's own representations made clear that such technologies posed a substantial risk of unauthorized disclosure of sensitive and identifiable health-related information.

340. These disclosures were made without Plaintiffs' or Class Members' knowledge, consent, or authorization, and were not necessary to provide medical services.

341. The third-party recipients included, but are not limited to, Google and other analytics and advertising entities.

342. Defendant's failure to prevent the transmission of user identifiers embedded in URLs to third-party advertising systems constitutes a basic failure to implement reasonable data handling practices.

CLASS ACTION COMPLAINT

343. Defendant knew or should have known that its conduct would result in the unauthorized disclosure of Plaintiffs' and Class Members' Private Information and communications, and that such disclosures would cause harm, including loss of privacy, misuse of sensitive information, and commercialization of user data.

344. As a direct and proximate result of Defendant's breaches, Plaintiffs and Class Members have suffered and will continue to suffer injury, including but not limited to:

- the loss of privacy and confidentiality in their sensitive medical and personal information;
- the unauthorized disclosure of the contents of their communications;
- diminution in the value of their Private Information;
- the invasion of their legally protected interests in maintaining the confidentiality of their health-related information;
- exposure to targeted advertising, profiling, and data aggregation based on sensitive health-related information;
- time and effort spent mitigating the consequences of Defendant's conduct and protecting their privacy;
- the loss of the benefit of the bargain for services that included, as a material component, the safeguarding of confidential information; and
- Defendant's unjust enrichment through the exploitation and monetization of Plaintiffs' and Class Members' Private Information.

345. These injuries were the foreseeable and natural consequence of Defendant's failure to exercise reasonable care in safeguarding Plaintiffs' and Class Members' Private Information and communications.

346. Defendant's conduct was uniform as to Plaintiffs and Class Members. Defendant implemented the same or substantially similar Tracking Technologies across its Website, resulting in the systematic and contemporaneous disclosure of communications and Private Information to the same categories of third parties.

CLASS ACTION COMPLAINT

347. Accordingly, Plaintiffs' and Class Members' injuries arise from a common course of conduct and can be proven through common evidence, including Defendant's configurations, vendor integrations, and data flows.

348. As a result of Defendant's negligent conduct, Plaintiffs and Class Members seek all damages available under California law, including:

- compensatory damages in an amount to be determined at trial;
- general damages for invasion of privacy and unauthorized disclosure of confidential information;
- damages for time, effort, and expenses incurred in mitigating the effects of Defendant's conduct;
- restitution and disgorgement of revenues, profits, and benefits obtained as a result of Defendant's conduct;
- statutory or nominal damages, as appropriate; and
- all other relief the Court deems just and proper.

## COUNT VI

### VIOLATIONS OF THE CALIFORNIA INVASION OF PRIVACY ACT

### Cal. Penal Code § 631

### (On behalf of Plaintiffs & the Nationwide Class, or in the alternative, the California Subclass)

349. Plaintiffs, on behalf of themselves and the Class designated immediately above (for the purposes of this Count, "Class Members"), repeat and re-allege each and every allegation contained in the Complaint as if fully set forth herein.

350. The California Invasion of Privacy Act ("CIPA") is codified at California Penal Code §§ 630 to 638.

351. CIPA begins with its statement of purpose:

> The Legislature hereby declares that advances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of

57

CLASS ACTION COMPLAINT

personal liberties and cannot be tolerated in a free and civilized society.

Cal. Penal Code § 630.

California Penal Code § 631(a) provides, in pertinent part: Any person who, by means of any machine, instrument, or contrivance, or in any other manner . . . willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section, is punishable by a fine not exceeding two thousand five hundred dollars ($2,500)[.]

Cal. Penal Code § 631.

352. A defendant must show it had the consent of *all* parties to a communication to avoid liability under § 631(a).

353. At all relevant times, Defendant aided, employed, agreed with, and conspired with third parties, including Google, to intercept Plaintiffs' and Class Members' communications while they were using Defendant's Website.

354. Defendant accomplished this by installing and configuring Tracking Technologies that caused Plaintiffs' and Class Members' communications to be intercepted and transmitted to Google in real time.

355. Specifically, Defendant configured its Website such that when Plaintiffs and Class Members completed the intake process, their browsers transmitted the contents of their communications—including webpage URLs reflecting completion of a medical intake process and identifying information such as email addresses

58

CLASS ACTION COMPLAINT

embedded in those URLs—to Google-controlled endpoints contemporaneously with those communications.

356. These transmissions occurred while Plaintiffs' and Class Members' communications were in transit and without their knowledge, authorization, or consent.

357. The content of these communications included Private Information, including identifying information and data reflecting Plaintiffs' and Class Members' pursuit of medical treatment.

358. Defendant intentionally inserted and deployed electronic devices and code into its Website that caused Plaintiffs' and Class Members' communications to be intercepted, duplicated, and transmitted to third parties.

359. Defendant knowingly facilitated Google's interception and acquisition of Plaintiffs' and Class Members' communications by embedding and operating these Tracking Technologies.

360. The following constitute "machine[s], instrument[s], or contrivance[s]" within the meaning of CIPA, or fall within the statute's broad catch-all provision:

    a. The Google Tracking Technologies embedded on Defendant's Website;

    b. Plaintiffs' and Class Members' browsers;

    c. Plaintiffs' and Class Members' computing devices;

    d. Defendant's web servers; and

    e. Google's servers and systems that received and processed the intercepted communications.

361. Defendant failed to disclose that it used Tracking Technologies to automatically and simultaneously transmit Plaintiffs' and Class Members' communications—including identifying information and health-related interactions—to third parties.

CLASS ACTION COMPLAINT

362. Defendant was aware that these communications were confidential, as evidenced by its representations that users' information would "never [be] shared" and was "protected by HIPAA."

363. By implementing Tracking Technologies that intercepted and transmitted Plaintiffs' and Class Members' communications to Google without consent, Defendant violated California Penal Code § 631(a), including by:

- intentionally reading or attempting to read the contents of communications while they were in transit;
- using or attempting to use the contents of those communications; and
- aiding, agreeing with, and employing third parties to intercept and use those communications.

364. Defendant's conduct constitutes an unlawful invasion of Plaintiffs' and Class Members' statutorily protected right to privacy.

365. Defendant's conduct is analogous to installing a hidden wiretap on Plaintiffs' communications with a healthcare platform.

366. As a result of the above violations and pursuant to California Penal Code § 637.2, Defendant is liable to Plaintiffs and Class Members for statutory damages of $5,000 per violation or three times actual damages, whichever is greater.

367. Plaintiffs and Class Members are also entitled to injunctive relief, declaratory relief, punitive damages, and reasonable attorneys' fees and costs.

## COUNT VII

**VIOLATIONS OF THE CALIFORNIA INVASION OF PRIVACY ACT**

**Cal. Penal Code § 632**

**(On behalf of Plaintiffs & the Nationwide Class, or in the alternative, the California Subclass)**

368. Plaintiffs, on behalf of themselves and the Class designated immediately above (for the purposes of this Count, "Class Members"), repeat and re-allege each and every allegation contained in the Complaint as if fully set forth herein.

60

CLASS ACTION COMPLAINT

369. The California Invasion of Privacy Act ("CIPA") is codified at California Penal Code §§ 630 to 638.

370. California Penal Code § 632(a) provides, in pertinent part:

> A person who, intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio, shall be punished by a fine not exceeding two thousand five hundred dollars ($2,500) per violation[.]

371. California Penal Code § 632(c) defines a "confidential communication" as:

> Any communication carried on in circumstances as may reasonably indicate that any party to the communications desires to be confined to the parties thereto, but excludes a communication made … in any other circumstances in which the parties to the communication may reasonably expect that the communication may be overheard or recorded.

372. Courts routinely hold that internet communications can have sufficient confidential character to support a section 632 claim.

373. Courts recognize that internet communications may constitute confidential communications where users reasonably expect that their interactions will not be intercepted, recorded, or disclosed to third parties.

374. Plaintiffs and Class Members engaged in confidential communications with Defendant through its Website, including communications involving the submission of personal and health-related information and the completion of medical intake processes.

375. These communications occurred in circumstances where Plaintiffs and Class Members reasonably expected that their communications would be confined to themselves and Defendant and would not be recorded or shared with third parties.

61
CLASS ACTION COMPLAINT

376. Defendant intentionally and without consent used electronic devices and Tracking Technologies to eavesdrop upon and record Plaintiffs' and Class Members' confidential communications.

377. Specifically, Defendant embedded and operated Tracking Technologies that caused Plaintiffs' and Class Members' communications—including identifying information such as email addresses and data reflecting completion of a medical intake process—to be captured and transmitted to third parties, including Google, contemporaneously with those communications.

378. These Tracking Technologies functioned as recording devices by duplicating and transmitting the contents of Plaintiffs' and Class Members' communications to third parties at the time those communications occurred.

379. Defendant aided, employed, agreed with, and conspired with Google and other third parties to record and eavesdrop upon Plaintiffs' and Class Members' confidential communications.

380. Defendant knowingly facilitated the recording and collection of Plaintiffs' and Class Members' Private Information by embedding and configuring Tracking Technologies that enabled third parties to receive and process those communications.

381. The following constitute "electronic amplifying or recording device[s]" within the meaning of § 632:

    a.  The Google Tracking Technologies embedded on Defendant's Website;

    b.  Plaintiffs' and Class Members' browsers;

    c.  Plaintiffs' and Class Members' computing devices;

    d.  Defendant's web servers; and

    e.  Google's servers and systems that received and processed the recorded communications.

382. Plaintiffs and Class Members did not know of, and did not consent to, any recording or eavesdropping of their confidential communications.

CLASS ACTION COMPLAINT

Case 2:26-cv-03796   Document 1   Filed 04/09/26   Page 64 of 75   Page ID #:64

383. Defendant failed to disclose that its Tracking Technologies would record and transmit the contents of Plaintiffs' and Class Members' communications to third parties.

384. Defendant was aware that these communications were confidential, as reflected in its representations that users' information would "never [be] shared" and was "protected by HIPAA."

385. The information recorded and transmitted by Defendant constitutes confidential communications, as Plaintiffs and Class Members had objectively reasonable expectations of privacy in their interactions with Defendant's Website and in the sensitive health-related information they provided.

386. By recording and disclosing Plaintiffs' and Class Members' confidential communications without consent, Defendant violated California Penal Code § 632.

387. As a result of Defendant's violations, and pursuant to California Penal Code § 637.2, Defendant is liable to Plaintiffs and Class Members for statutory damages of $5,000 per violation or three times actual damages, whichever is greater.

388. Plaintiffs and Class Members are also entitled to injunctive relief, declaratory relief, punitive damages, and reasonable attorneys' fees and costs.

## COUNT VIII

**VIOLATION OF THE CALIFORNIA INVASION OF PRIVACY ACT**

**Cal. Penal Code §§ 638.50–638.51**

**(On Behalf of Plaintiffs & the Nationwide Class, or in the alternative, the California Subclass)**

389. Plaintiffs, on behalf of themselves and the Class designated immediately above (for the purposes of this Count, "Class Members"), repeat and re-allege each and every allegation contained in the Complaint as if fully set forth herein.

390. The section 638.51(a) claim is based solely on Defendant's capture of non-content signaling data, regardless of whether content was also intercepted. The Tracking Technologies are able to capture content, or not, because

CLASS ACTION COMPLAINT

they work by loading a small library of functions which can be used whenever a site visitor takes an action tracked.

391. Cal. Penal Code § 638.50 prohibits any person or entity from knowingly installing or using a pen register or trap and trace device without first obtaining a court order or authorization as required by law.

392. Cal. Penal Code § 638.51 further prohibits any person or entity from installing or using a pen register or trap and trace device without the consent of the user of the service.

393. A "pen register" is defined under California law as a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted.

394. A "trap and trace device" is defined as a device or process that captures incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication.

395. At all relevant times, Plaintiffs and members of the Class used Defendant's Website to send and receive electronic communications over the internet while in California.

396. These communications included, among other things, requests to load webpages relating to telehealth services; interactions with Defendant's intake and onboarding interfaces; completion of medical intake forms; submission of identifying and health-related information; and HTTP requests and responses exchanged between Plaintiffs' browsers or devices and Defendant's servers.

397. Defendant knowingly installed, deployed, and operated Tracking Technologies—including Google Ads, DoubleClick, Google Analytics, and related tools—that functioned as pen registers and trap and trace devices.

398. These technologies were embedded within Defendant's Website and

64

CLASS ACTION COMPLAINT

executed in Plaintiffs' browsers or devices at the time Plaintiffs interacted with intake forms and related webpages.

399. Defendant's Tracking Technologies captured and recorded dialing, routing, addressing, and signaling information associated with Plaintiffs' electronic communications.

400. This information included, without limitation, query string parameters containing user-provided information, including email addresses; page paths and interaction signals; device, browser, and session identifiers used to associate communications with specific users; and network-level request data reflecting how, when, and from where communications were transmitted.

401. These data points constitute routing, addressing, and signaling information because they identify the destination, structure, timing, and nature of Plaintiffs' communications with Defendant's systems.

402. Defendant's Tracking Technologies captured this information contemporaneously with Plaintiffs' communications, including at the moment Plaintiffs completed intake forms and interacted with treatment-related functionality.

403. These technologies operated automatically and in real time, without requiring any action by Plaintiffs beyond engaging with Defendant's Website.

404. By capturing outgoing request information—such as URLs, parameters, and interaction signals—Defendant used processes that functioned as pen registers within the meaning of Cal. Penal Code § 638.50.

405. By capturing incoming and outgoing communication data sufficient to identify the source and destination of communications, Defendant also used processes that functioned as trap and trace devices within the meaning of Cal. Penal Code § 638.51.

406. These processes enabled Defendant and its third-party partner, including Google, to monitor and record the routing, addressing, and signaling information associated with Plaintiffs' electronic communications.

65

CLASS ACTION COMPLAINT

407. Defendant installed and used these devices and processes without obtaining a court order or other lawful authorization.

408. Defendant also installed and used these devices and processes without the consent of Plaintiffs and members of the Class.

409. Plaintiffs and Class Members were not informed that their interactions—including communications reflecting their pursuit of medical treatment—would be transmitted to and recorded by Google.

410. Any purported consent obtained by Defendant was not informed, explicit, or meaningful, and therefore does not satisfy the requirements of Cal. Penal Code §§ 638.50–638.51.

411. The routing, addressing, and signaling information captured by Defendant revealed highly sensitive information about Plaintiffs' medical interests, treatment-seeking behavior, and identity.

412. Plaintiffs and Class Members had a reasonable expectation that such information would not be captured, monitored, or transmitted to third parties.

413. Defendant knowingly enabled and facilitated Google's collection and processing of this information by embedding Tracking Technologies within its Website.

414. Through these integrations, Defendant caused Plaintiffs' communications and associated signaling information to be transmitted to Google in real time.

415. Defendant's conduct constitutes an egregious invasion of privacy and a violation of California law.

416. As a direct and proximate result of Defendant's violations of Cal. Penal Code §§ 638.50–638.51, Plaintiffs and Class Members have suffered harm, including invasion of privacy, loss of control over personal information, and statutory damages.

417. Pursuant to Cal. Penal Code § 637.2 and other applicable provisions, Plaintiffs and Class Members seek statutory damages, injunctive relief, and all other relief available under the law.

<u>**COUNT IX**</u>

**VIOLATIONS OF THE COMPREHENSIVE COMPUTER DATA ACCESS AND FRAUD ACT ("CDAFA")**

**Cal. Penal Code § 502, *et seq.***

**(On behalf of Plaintiffs & the Nationwide Class, or in the alternative, the California Subclass)**

418. Plaintiffs, on behalf of themselves and the Class designated immediately above (for the purposes of this Count, "Class Members"), repeat and re-allege each and every allegation contained in the Complaint as if fully set forth herein.

419. Cal. Penal Code Section 502 provides that a person who causes, by any means, the access of a computer, computer system, or computer network in one jurisdiction from another jurisdiction is deemed to have personally accessed the computer, computer system, or computer network in each jurisdiction.

420. Plaintiffs' and Class Members' devices on which they accessed Defendant's Website, including computers, smartphones, and tablets, constitute computers or "computer systems" within the meaning of CDAFA. Cal. Penal Code § 502(b)(5).

421. Defendant violated Cal. Penal Code § 502(c)(2) by knowingly accessing and without permission taking, copying, analyzing, and using Plaintiffs' and Class Members' data as described herein.

422. Defendant accessed Plaintiffs' and Class Members' Private Information—including information transmitted through their browsers while interacting with Defendant's Website—for limited purposes associated with providing telehealth-related services, but exceeded that permission by using and transmitting that data to third parties, including Google, through Tracking Technologies for advertising, analytics, and profiling purposes.

423. Defendant also violated Cal. Penal Code § 502(c)(7) by knowingly and without permission accessing, or causing to be accessed, Plaintiffs' and Class

67
CLASS ACTION COMPLAINT

Members' data.

424. Defendant caused third-party Tracking Technologies to execute within Plaintiffs' and Class Members' browsers and devices, thereby causing unauthorized access to and collection of Plaintiffs' and Class Members' data beyond the scope of any permission granted.

425. Defendant's conduct involved the unauthorized access and use of data transmitted from Plaintiffs' and Class Members' devices, including identifying information and data reflecting their interactions with Defendant's Website and pursuit of medical treatment.

426. Defendant was unjustly enriched by acquiring valuable Private Information from Plaintiffs and Class Members without permission and using it to enhance its marketing, advertising efficiency, and business operations.

427. Plaintiffs and Class Members retain a stake in the profits Defendant derived from the misuse of their Private Information because it would be unjust for Defendant to retain those profits.

428. Defendant caused access to Plaintiffs' and Class Members' devices in and from the State of California, including through the execution of Tracking Technologies and transmission of data from those devices to third-party systems.

429. Defendant's conduct caused code to execute on Plaintiffs' devices that accessed and transmitted data in a manner not authorized by Plaintiffs.

430. Accordingly, Defendant is deemed to have accessed Plaintiffs' and Class Members' devices in California within the meaning of Cal. Penal Code § 502.

431. As a direct and proximate result of Defendant's unlawful conduct, Plaintiffs and Class Members have suffered loss, including loss of privacy, loss of control over their data, and the unauthorized use of their information, and Defendant has been unjustly enriched in an amount to be proven at trial.

432. Plaintiffs and Class Members are entitled to punitive and exemplary damages pursuant to Cal. Penal Code § 502(e)(4) because Defendant's violations

68

CLASS ACTION COMPLAINT

were willful and carried out in conscious disregard of Plaintiffs' and Class Members' rights.

433. Plaintiffs and Class Members are also entitled to recover their reasonable attorneys' fees and costs pursuant to Cal. Penal Code § 502(e).

## COUNT X

## VIOLATIONS OF THE CALIFORNIA CONFIDENTIALITY OF MEDICAL INFORMATION ACT

### Cal. Civ. Code §§ 56, *et seq.*

**(On behalf of Plaintiffs & the Nationwide Class, or in the alternative, the California Subclass)**

434. Plaintiffs, on behalf of themselves and the Class designated immediately above (for the purposes of this Count, "Class Members"), repeat and re-allege each and every allegation contained in the Complaint as if fully set forth herein.

435. The California Confidentiality of Medical Information Act ("CMIA"), Cal. Civ. Code §§ 56 et seq., prohibits health care providers and other covered entities from disclosing medical information relating to patients without authorization.

436. "Medical information" includes any individually identifiable information, in electronic or physical form, in possession of or derived from a provider of health care regarding a patient's medical history, mental or physical condition, or treatment. Cal. Civ. Code § 56.05.

437. "Individually identifiable" means that the information includes or contains any element of personal identifying information sufficient to allow identification of the individual. *Id*.

438. Defendant holds itself out as providing healthcare-related and telehealth services and collects medical and health-related information from users, including through intake forms and treatment-related interactions on its Website.

439. To the extent Defendant is a "provider of health care" or otherwise subject to CMIA, Defendant owed Plaintiffs and Class Members duties to maintain the

69

confidentiality of their medical information and to refrain from unauthorized disclosure.

440. Plaintiffs and Class Members provided medical and health-related information to Defendant, including information reflecting their pursuit of treatment, responses to intake questions, and interactions with Defendant's Website.

441. This information was combined with identifying information, including email addresses and other persistent identifiers, such that it constituted "medical information" within the meaning of the CMIA.

442. For example, Defendant configured its Website to embed user-provided identifiers, including email addresses, within webpage URLs reflecting completion of a medical intake process, thereby linking Plaintiffs' identities with their health-related activity.

443. Defendant disclosed this medical information to third parties, including Google, by embedding and operating Tracking Technologies that transmitted Plaintiffs' and Class Members' communications and associated identifying information.

444. These disclosures occurred without Plaintiffs' or Class Members' authorization and were not necessary for the provision of healthcare-related services.

445. The disclosures included information sufficient to identify Plaintiffs and Class Members and to reveal their medical interests, treatment-seeking behavior, and interactions with Defendant's services.

446. Defendant did not obtain valid authorization for these disclosures as required by Cal. Civ. Code § 56.11.

447. Any purported authorization was not clearly separate from other terms, was not executed for the sole purpose of authorizing disclosure, did not adequately identify the recipients of the information, and did not provide a valid expiration or scope.

448. Defendant's Website disclosures and pre-checked acknowledgments do

CLASS ACTION COMPLAINT

not satisfy CMIA's strict requirements for authorization.

449. By disclosing Plaintiffs' and Class Members' medical information to third parties without valid authorization, Defendant violated the CMIA.

450. Defendant's conduct constitutes an unlawful and unauthorized disclosure of confidential medical information.

451. As a direct and proximate result of Defendant's conduct, Plaintiffs and Class Members have suffered harm, including invasion of privacy, loss of confidentiality of their medical information, and loss of control over their personal data.

452. Plaintiffs and Class Members seek all relief available under the CMIA, including statutory damages, compensatory damages, punitive damages, attorneys' fees, and costs

## COUNT XI

## UNJUST ENRICHMENT

**(On behalf of Plaintiffs & the Nationwide Class, or in the alternative, the California Subclass)**

453. Plaintiffs, on behalf of themselves and the Class designated immediately above (for the purposes of this Count, "Class Members"), repeat and re-allege each and every allegation contained in the Complaint as if fully set forth herein.

454. This claim is brought under California law and pleaded in the alternative to Plaintiffs' other claims.

455. Defendant obtained money, property, and other benefits from Plaintiffs and Class Members through its collection, use, and disclosure of their Private Information via the Tracking Technologies described herein.

456. Plaintiffs and Class Members conferred a benefit on Defendant by providing their Private Information in connection with obtaining telehealth-related services, including completing intake forms and seeking medical treatment, with the reasonable expectation that such information would be used solely for those purposes

71

and kept confidential.

457. Defendant knowingly and wrongfully exceeded the scope of that authorization by transmitting, using, and monetizing Plaintiffs' and Class Members' Private Information for analytics, advertising, and other commercial purposes unrelated to providing services to Plaintiffs and Class Members.

458. Through this conduct, Defendant derived economic and other benefits, including by enhancing its marketing capabilities, improving user targeting and profiling, increasing conversion rates, reducing customer acquisition costs, and obtaining value through its relationships with third parties, including Google.

459. Plaintiffs and Class Members did not consent to these uses and did not provide their Private Information for Defendant's commercial exploitation. The benefits conferred were therefore not gratuitous.

460. Defendant's retention of these benefits is unjust because they were obtained through wrongful conduct, including the unauthorized interception, recording, and disclosure of Plaintiffs' and Class Members' Private Information.

461. As a direct and proximate result of Defendant's conduct, Defendant has been unjustly enriched at the expense of Plaintiffs and Class Members.

462. Plaintiffs and Class Members seek restitution and disgorgement of all benefits Defendant unjustly obtained, including all revenues, profits, and other value derived from the collection, use, and disclosure of their Private Information.

463. It would be inequitable and contrary to good conscience for Defendant to retain these benefits. Plaintiffs and Class Members are therefore entitled to restitutionary relief and all other appropriate equitable remedies.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, on behalf of themselves and Class Members, requests judgment against Defendant and that the Court grant the following:

A.    For an Order certifying the Class and appointing Plaintiffs and Counsel to represent such Class;

CLASS ACTION COMPLAINT

B.    For equitable relief enjoining Defendant from engaging in the wrongful conduct alleged in this Complaint pertaining to the misuse and/or disclosure of the Private Information of Plaintiffs and Class Members;

C.    For injunctive relief requested by Plaintiffs, including, but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiffs and Class Members:

D.    For an award of damages, including, but not limited to, actual, consequential, statutory, punitive, and nominal damages, as allowed by law in an amount to be determined;

E.    For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

F.    For prejudgment interest on all amounts awarded; and

G.    Such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand that this matter be tried before a jury.

73
CLASS ACTION COMPLAINT

DATE: April 9, 2026                Respectfully Submitted,

/s/ Victor J. Sandoval
Victor J. Sandoval
**ALMEIDA LAW GROUP LLC**
3415 S. Sepulveda Blvd., Suite 1121
Los Angeles, California 90034
(562)534-5907
victor@almeidalawgroup.com

Counsel for Plaintiff & Proposed Classes

Andrew R. Tate (*pro hac vice* forthcoming)
**PEIFFER WOLF CARR**
**KANE CONWAY & WISE LLP**
235 Peachtree St. NE, Suite 400
Atlanta, GA 30303
(314) 669-3600
atate@peifferwolf.com

Wail Jihadi (*pro hac vice* forthcoming)
**PEIFFER WOLF CARR**
**KANE CONWAY & WISE LLP**
1701 Pennsylvania Avenue N.W., Suite 200
Washington DC 20006
(314) 669-3600
wjihadi@peifferwolf.com


*Attorneys for Plaintiffs & the Proposed Class*

74
CLASS ACTION COMPLAINT